IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| United States of America, | C/A No. 3:14-CV-01794-JFA |
| vs. | |
| $116,850 in United States Currency, | **ORDER** |
| Defendant *in Rem*. | |

## I.  INTRODUCTION

This matter is before the Court on the Claimant Tran's ("Claimant") Motion for Attorney's Fees, Costs, and Interest pursuant to 28 U.S.C. § 2465(b)(1). ECF No. 114.  This matter has been exhaustively briefed, and the Court heard extensive oral arguments on the afternoon of November 6, 2015.  For the reasons discussed below, this Court awards attorney's fees in the amount of one hundred fifty-two thousand and five hundred dollars ($152,500.00), costs in the amount of eight thousand two hundred and five dollars and four cents ($8,205.04), and statutory interest in the amount of one hundred and one dollars and forty-nine cents ($101.49).

## II.  FACTUAL AND PROCEDURAL BACKGROUND

On December 13, 2013, the Government seized $116,850.00 (the "Funds") from Claimant based upon allegations of drug trafficking. On May 2, 2014, the Government filed a Complaint for Forfeiture where it alleged that the Funds were the proceeds of drug trafficking, money laundering, unlicensed money transmitting, and other unspecified unlawful activity. On May 23, 2014, Claimant filed a Verified Claim pursuant to 21 U.S.C. §853(n) and Fed. R. Crim. P. 32.2(c), which identified his interest in the Funds. On August 13, 2015, after more than a year of litigation, the Government moved to dismiss the action with prejudice. On August 14, 2015, the Court granted

the Government's motion and ordered the Funds returned without delay.[1] On August 21, 2015, Claimant filed the instant motion.

### III.   LEGAL STANDARD

The Civil Asset Forfeiture Reform Act of 2000 ("CAFRA") provides that in "any civil proceeding to forfeit property under any provision of Federal law in which the claimant substantially prevails, the United States shall be liable for reasonable attorney fees and other litigation costs reasonably incurred by the claimant." 28 U.S.C. § 2465(b)(1)(A); *see also U.S. v. Davis*, 648 F.3d 84, 2011 WL 2162897, at *11 (2d Cir. 2011). CAFRA thus requires the Government to pay the attorney's fees and other litigation costs of a claimant who "substantially prevails" in a forfeiture proceeding.

To "substantially prevail" under CAFRA, a claimant must achieve an "alteration of the legal relationship of the parties" marked by "judicial *imprimatur* on the change." *Buckhannon Bd. and Care Home Inc. v. West Virginia Dept. of Health & Human Services*, 532 U.S. 598, 605 (2001). For example, a claimant has "substantially prevailed" so as to entitle him to attorney's fees, costs, and interest when the court denies the Government's request for forfeiture of assets. *See U.S. v. $10,795*, No. 8:08-3358, 2009 WL 2513440, at *1 (D.S.C. August 12, 2009).

Importantly, "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). "Ideally, of course, litigants will settle the amount of a fee." *Id*. When settlement is not possible, the claimant bears the burden of establishing entitlement to and documentation of the appropriate hours and hourly rates. *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988)(citing *Hensley*, *supra*). Further, the claimant's attorney should exercise "billing judgment" regarding hours worked and should

---

[1] The dismissal occurred midway through the hearing on the motion to suppress after this Court granted Claimant's request to obtain a copy of the personnel file of the Government's principal witness.

maintain billing time records in a manner that will enable a reviewing court to identify distinct claims. *Hensley* at 437.

## IV. DISCUSSION

The parties agree that Claimant is entitled to an award of attorney's fees, a reimbursement of reasonable costs, and statutory interest in the amount of one hundred and one dollars and forty-nine cents ($101.49). The only two issues in dispute are: A) the amount of attorney's fees; and B) the amount of costs.

### A. Attorney's Fees

In the Fourth Circuit, the lodestar analysis applies to an award of attorney's fees. *Trimper v. City of Norfolk, Va.*, 58 F.3d 68, 73 (4th Cir. 1995). Under the lodestar method, attorney's fees are determined by taking "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 72 n.4 *(*citing *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)).

The district court must look to the following factors to determine the reasonableness of an attorney's lodestar: (1) the time and labor involved; (2) the difficulty and novelty of the issues; (3) the necessary legal skill required; (4) the attorneys' opportunity costs in pressing the instant litigation; (5) the customary fee; (6) the contingent nature of the fee; (7) the time limitations imposed by circumstances or the client; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See, e.g., Barber v. Kimbrell's Inc*., 577 F.2d 216, 226 (4th Cir. 1978); *McAfee v. Boczar*, 738 F.3d 81, 89 (4th Cir. 2013), *as amended* (Jan. 23, 2014); *Savani v. URS Professional Solutions, LLC*, No. 1:06-cv-02805-JMC, 2014 WL 172503, at *3, 8 (D.S.C. Jan. 15, 2014); Local Rule 54.02(A) (D.S.C.).

### 1. The time and labor involved.

This litigation has spanned nearly two years and has been hard fought by both sides. Indeed, this Court can think of other cases before it that have or will proceed through the trial phase and likely involve less time on the part of counsel and the Court. Beginning with a hearing on the Motion to Dismiss, continuing with the hearing on the issue of standing, and culminating in the hearing on the Motion for Suppression, this case involved a number of interesting and time consuming issues. Add to those, the numerous orders on discovery disputes (*See*, *e.g.*, ECF Nos. 22, 34, 35, 39, 44, 55, 58) and the near endless briefing (*See*, *e.g.*, ECF Nos. 19, 20, 32, 36, 56, 57), then this case would consume a large part of the docket of any trial judge. Obviously, the attorneys on both sides devoted considerable time to this case.

Consequently, the Court is not surprised by the number of hours Claimant seeks for attorney's fees in this case – 461 attorney hours and 46 paralegal hours. Equally unsurprising is the Government's position that such a figure is "patently obscene." While the Government has not suggested an exact number of appropriate hours, an analysis of its briefing would indicate that it might have agreed to fees somewhere in the range of thirty percent of what Claimant asks.

#### a. Administrative Forfeiture

Claimant seeks to recover attorney's fees for twelve hours of work during the administrative forfeiture proceedings of the Defendant Currency between January 8, 2014 and February 24, 2014. However, the Government argues it is only liable for attorney's fees incurred during the civil forfeiture proceedings.

Because the requested fee award implicates the Government's sovereign immunity, any waiver of immunity must be "*unequivocally* expressed, with all uncertainties being resolved in favor of the [G]overnment." *Boehms v. Crowell*, 139 F.3d 452, 463 (5th Cir. 1998)(emphasis in

4

original). Moreover, the "American Rule" generally precludes fee-shifting absent "express statutory authorization to the contrary." *Id*. CAFRA's fee-shifting provision applies only to civil proceedings "to *forfeit* property," that is, civil forfeiture actions initiated by the Government. 28 U.S.C. § 2465(b)(1)(emphasis added). *Cf. Carvajal v. United States*, 521 F.3d 1242, 1247 (9th Cir. 2008)(explaining that the parallel provision of CAFRA providing for payment of interest, § 2465(b)(1)(C), "is triggered *only* when the government institutes civil forfeiture proceedings" and the party seeking fees "substantially prevails").

Accordingly, Claimant is not entitled to an award of attorney's fees for work performed during the administrative forfeiture proceedings.

### b. Judicial Forfeiture

Claimant seeks to recover 449 hours of time billed during the judicial forfeiture proceeding. The Government has made specific objections to a large numbers of those hours. The Court declines to examine and discuss each billing entry throughout the litigation, but rather will examine the unreasonable entries and address several of the Government's objections.

### i. Motion for Attorneys' Fees and Costs

By the Court's count, Claimant seeks to be compensated for 62.8 hours of attorney work for the drafting of the instant motion and the reply to the Government's response. The Court finds this amount to be excessive.

As an initial matter, it seems to this Court that awarding attorney's fees for drafting a motion requesting the attorney's fees is inappropriate. In traditional litigation, most attorneys would not charge a client for 62.8 hours to create a bill or explain a fee. "Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Hensley* at 434 (citing *Copeland v. Marshall*, 641 F.2d 880, 891 (1980)(en banc). Nevertheless,

this Court is keenly aware that such awards are made on a regular basis. *See, e.g., Luessenhop v. Clinton Cty., N.Y.*, 324 F. App'x 125 (2d Cir. 2009); *Vaughn v. Heckler*, 860 F.2d 295, 296 (8th Cir. 1988).

However, 50 hours for drafting a motion for attorney's fees and 12.8 hours for drafting a reply is excessive. Rather, the Court will only award 20 hours for the drafting of the motion. A federal litigator with the experience of Claimant's counsel should be able to complete such a motion in that time. Further, the Court will award only 5 hours for drafting the reply, which included much of the same argument and exhibits as the initial motion. Accordingly, the Court finds Claimant is entitled to compensation for 25 hours billed for briefing and arguing the instant motion.

### ii.     Investigation of Government's Expert

Claimant seeks compensation for 4.5 hours for researching the Government's expert witness. As the Government points out, Claimant was provided with a curriculum vitae. While some further investigation was likely warranted, 4.5 hours of attorney time is excessive. Instead, the Court will award attorney's fees for only 2 hours of attorney time spent investigating the expert.

### iii.    Motion to Compel

Claimant seeks attorney's fees for 24.3 hours spent responding to the Government's Motion to Compel. The Government filed the motion after two attempts to have the Claimant clarify his answers to the special interrogatories. Once briefed, the Court granted the Government's motion. Claimant's request is excessive. Responding to a motion to compel is a practice all too common in modern litigation, and an experienced federal litigator should not consume large swaths of time accomplishing the task. Accordingly, the Court will award Claimant attorney's fees for 10 hours.

### iv.     Failed Arguments and Claims

The Government objects to the recovery of attorney's fees for time spent on "failed arguments." By the Government's count, Claimant's counsel spent about 72.5 hours on efforts that were ultimately unfruitful, including: his motion for summary judgment (37.5 hours), his motions to exclude witnesses and strike the Government's summary judgment motion (2 hours), his motion to dismiss (28.1 hours), and the time spent providing deficient responses to interrogatories (4.9 hours).

"[A] district court may adjust the hours claimed to eliminate time that was unreasonably, unnecessarily, or inefficiently devoted to the case." *Hensley*, 461 U.S. at 434. Indeed, the court may even disallow time spent in litigating failed claims. *Lipsett v. Blanco*, 975 F.2d 934, 940–41 (1st Cir. 1992). "Unsuccessful claims that are 'distinct in all respects' from the claims upon which the plaintiff has prevailed 'should be excluded in considering the amount of a reasonable fee.'" *Hyatt v. Barnhart*, 315 F.3d 239, 254 (4th Cir. 2002)(quoting Hensley, 461 U.S. at 440). However, such discretion is limited by the principles of interconnectedness. *Lipsett*, 975 F.2d at 940–41 (refusing to grant reductions because "the work done on these unsuccessful claims was sufficiently interconnected with the causes of action upon which appellee prevailed.").

In this case, despite the Government's objections, the failed arguments have sufficient interconnectivity with the rest of the case to justify an award of attorney's fees. The motion for summary judgement, the motions to exclude witnesses and strike, and the motion to dismiss were all interrelated. Likewise, the answers to the special interrogatories, while deficient, were also firmly connected to the case. None of the failed arguments were "distinct in all respects" from the other issues. Rather, they represent good faith attempts by a zealous advocate to represent her client.

Notwithstanding the interconnectivity, the Government argues that the request for attorney's fees is excessive. The Court respectfully disagrees. Specifically, 28.1 hours for the motion to dismiss is reasonable considering the extensive briefings, preparation, and hearing held on the matter. Similarly, 37.5 hours on the motion for summary judgment reflects the near endless briefing and complicated issues including a hearing on standing. Lastly, the requests for time devoted to the motions to exclude and strike and the time drafting deficient responses are reasonable.

Accordingly, the Court finds that Claimant should be compensated for 394.4 hours of attorney time and 46 hours of paralegal time.

### 2. The difficulty and novelty of the issues.

Claimant characterizes this case as "a complex area of federal civil law which is a practice specialty that involves one of the most esoteric mixtures of law and procedure." ECF No. 114-1 p. 10. Conversely, the Government asserts this case is "fairly routine" and "more comparable to [a] criminal drug case than it is to complex commercial civil litigation or complicated criminal fraud schemes." ECF No. 116 p. 20. While not quite securities litigation or an intellectual property dispute, the case is certainly more complicated than an insurance fight over a car wreck or a drug trafficking prosecution. This case involved criminal law, Constitutional law, federal Admiralty procedure, the asset forfeiture scheme, the partnership law of another state, and now the attorney's fees provision of CAFRA. Accordingly, the Court finds this case presented both difficult and novel issues.

### 3. The necessary legal skill required.

As discussed above, this was a complicated case. It required extensive discovery, several dispositive motions, and no small amount of perseverance for the Claimant to prevail. Further, the

case was prosecuted by a very capable assistant United States attorney who deftly wielded the full weight of the federal government. "The skill required of Claimant's attorney may also be reflected in the quality of opposing counsel." *See In re LandAmerica 1031 Exch. Servs., Inc. I.R.S. 1031 Tax Deferred Exch. Litig.*, No. 3:09-CV-00054, 2012 WL 5430841, at *3 (D.S.C. Nov. 7, 2012).

### 4. The attorney's opportunity cost in pressing the instant litigation.

Before this case is finally concluded, Claimant's counsel will have incurred nearly 400 hours of attorney time over a period of nearly two years. Further, Claimant's counsel is a sole practitioner. Thus, the attorney time committed by counsel to representing Claimant is significant, given the total attorney time available for her to pursue cases that she had or could have had over this time period. Clearly, counsel bore a significant opportunity cost in pressing this litigation.

### 5. The customary fee.

The hourly rate included in an attorney's fee must be reasonable. *Hensley*, 461 U.S. at 433. Attorneys should be compensated at the "prevailing market rates in the relevant community." *Rum Creek Coal Sales, Inc v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994). This determination is fact-intensive and is best guided by what attorneys earn from paying clients for similar services in similar circumstances. *Id*. "The 'actual rate that counsel can command on the market is itself highly relevant proof of the prevailing community rate.'" *In re LandAmerica*, 2012 WL 5430841, at *6 (quoting *Bebchick v. Washington Metropolitan Area Transit Com.*, 805 F.2d 396, 404 (D.D.C. 1986)). The relevant community is the community in which the district court sits. *See Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2nd Cir. 1997). Importantly, unlike other attorney fee provisions of federal law, CAFRA does not have a cap on hourly rates. *See United States v. $60,201.00 U.S. Currency*, 291 F. Supp. 2d 1126, 1130 (C.D. Cal. 2003). Rather, "Congress intended to liberalize the award of attorney fees, rather than restrict them." *Id*.

9

This Court is aware of only one other award of attorney's fees under CAFRA in this district. *See United States v. $10,795 in U.S. Currency*, No. CA8:08-3358-GRA, 2009 WL 2513440 (D.S.C. Aug. 12, 2009)(hereinafter "*Sayce*"). In *Sayce*, the claimant prevailed in a forfeiture action culminating with the Government moving to dismiss with prejudice and returning of all of the defendant currency. *Id*. The parties negotiated an agreement as to the amount of attorney's fees, and the Honorable G. Ross Anderson approved an award of $7,297.50. ECF No. 124-2. The figure was based on 41.70 hours of attorney time billed at a rate of $175 per hour.

The Government submitted *Sayce* in its Supplement Reply to Claimant's Motion for Attorney's Fees and Costs presumably as evidence of a reasonable hourly rate in this district. ECF No. 124. However, *Sayce* is readily distinguishable from the case at bar. First, in *Sayce*, the claimant's counsel became involved in the case "at the request of the court." ECF No. 124-2 p. 4. Further, counsel submitted that he "typically, handles matters at higher hourly rates" and "retained the $175 per hour rate so as not to raise questions from the government, though a higher rate more in line with counsel's typical billing rates would certainly not be unreasonable." *Id*.

The case at bar is a stark contrast to *Sayce*. There, the government filed the complaint in October of 2008 and moved to dismiss in July of 2009 – totaling a mere eight months of litigation. In *Sayce*, counsel agreed to the representation at the request of the court and was only involved from February of 2009 to August of 2009 – totaling only seven months. By the admission of claimant's counsel, *Sayce* did not raise questions that were "significantly novel or difficult." Further, the parties in *Sayce* agreed, admirably, to a settlement on the matter of attorney's fees.

By contrast, in the instant action, the Government filed the complaint in May in 2014 and moved to dismiss in August of 2015 – over sixteen months of litigation. Indeed, Claimant's counsel became involved in the case in December of 2013 – five months prior to the litigation and nearly

two years ago. Throughout that time, this case presented difficult and novel questions. Additionally, if not predictably, the issue of attorney's fees has been as hotly contested as every other issue. Accordingly, this Court does not find *Sayce* particularly helpful to its determination.

In his motion, Claimant requests $425 per hour and cites a number of complex commercial cases from this district, which provide a range of partner level rates from $500 to $700 per hour. ECF No. 114-1 p. 14-15. Conversely, the Government characterizes this case as "fairly routine" and comparable to a "criminal drug case" and offers the CJA rate of $127 per hour as "an appropriate hourly rate." ECF Nos. 116, 119.

This case is certainly more complex than an average "criminal drug case." However, it is not quite complex commercial litigation either. Rather, this is a complicated financial dispute based on a bizarre set of facts and litigated in the shadow of a possible criminal indictment. Given the nature and power of the Government, the stakes are very high. After carefully reviewing the cases from this district, weighing their relative complexity with the case at bar, and taking into consideration the evidence concerning the rates of other practitioners in this field, the Court finds the appropriate attorney rate for this litigation to be $375 per hour.

Additionally, Claimant seeks an award of attorney's fees for work done by a paralegal. The Court notes a discrepancy between Claimant's motion and the invoice from his attorney. In his motion, Claimant seeks fees for work done by a paralegal at a rate of $125 per hour. ECF No. 114-1 p. 14. Conversely, in the exhibit attached to the motion, the paralegal rate is listed at $100 per hour. ECF No. 114-3. The Court finds that $100 per hour rate is reasonable and appropriate.

### 6. The contingent nature of the fee.

Claimant's counsel took a significant risk in taking this case. First, there was no guarantee Claimant would "substantially prevail" as required to trigger attorney's fees under CAFRA. That

risk is not merely hypothetical, but rather typical in asset forfeiture litigation. *See, e.g.*, *United States v. 2007 BMW 335i Convertible, VIN:WBAWL73547PX47374*, 648 F. Supp. 2d 944, 945 (N.D. Ohio 2009); *United States v. 115-98 Park Lane S., No. 10 CIV. 3748 BMC*, 2012 WL 3861221, at *1 (E.D.N.Y. Sept. 5, 2012) *aff'd sub nom. United States v. Capital Stack Fund, LLC*, 543 F. App'x 17 (2d Cir. 2013).

### 7. The time limitations imposed by the circumstances or the client.

This case involved extensive efforts in research, near endless briefing, review of evidence, and a healthy motions practice. Indeed, Claimant's counsel was called upon to address issues on short notice. The time demands of this case came at the expense of work on other cases. "Priority work that delays the lawyer's other legal work is entitled to some premium." *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 718 (5th Cir. 1974).

### 8. The amount in controversy and the result obtained.

The attorney's fee award should reflect the relief granted. *Id*. Here, the relief granted to Claimant was uniformly successful. On the Government's motion, the case was dismissed with prejudice, and the funds were returned to Claimant in full.

### 9. The experience, reputation, and the ability of the attorneys.

Claimant's counsel has extensive experience in forfeiture cases. Both as an Assistant United States Attorney and in private practice, Claimant's counsel has a long history of success as a federal litigator and an excellent reputation in the legal community. She is one of the youngest women inducted into the American College of Trial Lawyers from South Carolina. Also relevant is the ability and experience of opposing counsel. Assistant United States Attorney Leesa Washington has years of experience in asset forfeiture litigation. She is a zealous advocate, and her tenacity as a litigator is a credit to the United States Attorney's Office and this district.

### 10. The "undesirability" of the case.

The undesirability of this case lies mostly in its risky nature. This was a very difficult case that consumed a tremendous amount of time. Unlike a traditional plaintiff's case, there was no chance of a large jury verdict at the end, and unlike a traditional defense case, there was no well-heeled corporate client willing to pay a high hourly rate. Further, the more time Claimant's counsel invested in the litigation, the more risky it became.

### 11. The nature and length of the professional relationship.

Claimant retained counsel shortly after the seizure occurred at the very outset of the instant litigation. During the ensuing two years, Claimant and his attorney have worked closely together in every way this Court can see.

### 12. Awards in similar cases.

This fee award is reasonable in light of the awards in other cases. Significant awards of attorney's fees in asset forfeiture litigation are not uncommon. Further, the amount of the fee in light of the amount in controversy is not without comparison. *See., e.g., U.S. v. 4,432 Mastercases of Cigarettes*, 322 F. Supp. 2d 1075 (C.D. Cal. 2004)(approved nearly $500,000 in fees pursuant to §2465(b)(1)(A)); *U.S. v. $60,201.00 U.S. Currency*, 291 F. Supp. 2d 1126 (C.D. Cal. 2003)(approximately $60,000 in fees awarded); *U.S. v. $193,680.00 U.S. Currency*, CV 01-9676-CBM (Mcx)(over $125,000 in fees awarded); *U.S. v. $215,271.00 et al*, No. CV 01-9812-DDP (nearly $80,000 in fees awarded); and *United States v. One Rolex 18K Gold Watch With Light Brown Crocodile Style Wrist Band*, 696 F. Supp. 2d 143 (D. Puerto Rico 2010) (awarding $6,842.25 in attorney's fees).

13

### B. Costs

Claimant requests costs in the amount of $9,501.69. The Government objects to $1,296.65 of costs incurred during the administrative forfeiture proceedings of the Defendant Currency. Further, the Government argues that much of other costs are excessive and unreasonable. "[A]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir.1998). For reasons discussed above, the Court finds the costs incurred during the administrative forfeiture proceedings are improper. By contrast, without analyzing each entry, the Court finds that the other costs requested by Claimant are reasonable under the circumstances. Accordingly, the Court awards Claimant $8,205.04 in costs.

### V. CONCLUSION

Therefore, for the foregoing reasons, Claimant's Motion for Attorney's Fees, Costs, and Interest pursuant to 28 U.S.C. § 2465(b)(1) (ECF No. 114) is granted in part and denied in part, and the Court orders the Government to pay Attorney's Fees in the amount of one hundred fifty-two thousand and five hundred dollars ($152,500.00), costs in the amount of eight thousand two hundred and five dollars and four cents ($8,205.04), and statutory interest in the amount of one hundred and one dollars and forty-nine cents ($101.49).

**IT IS SO ORDERED.**

December 21, 2015                                   Joseph F. Anderson, Jr.
Columbia, South Carolina                            United States District Judge